IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ROGER BECKER,**                      :
                                                     :      **Civil No. 1:10-CV-2066**
                    **Plaintiff**              :
                                                     :
                                                     :
          **v.**                                 :
                                                     :
                                                     :
**JEFFREY M. GODBOLDTE,**      :      **(J. Rambo)**
                                                     :
                    **Defendant**          :

**M E M O R A N D U M**

        This case involves various federal civil rights and state tort claims resulting from an arrest and subsequent conviction of Plaintiff for driving under the influence ("DUI"). The conviction was overturned on appeal, and Plaintiff, Roger Becker ("Becker") brought suit against the arresting officer, Defendant State Trooper Jeffrey Godboldte ("Godboldte"). Before the court is Defendant's motion for judgment on the pleadings. (Doc. 5.) For the reasons set forth below, the court will grant Defendant's motion.

**I.      Background**

        **A.      Facts**

        The following facts are taken directly from Plaintiff's complaint unless otherwise noted. On October 17, 2005, Plaintiff was driving a farm vehicle on a road in Springfield, York County, Pennsylvania.[1] (Doc. 1, Compl. ¶ 9.) While stopped to

---

[1] Defendant disputes the classification of Plaintiff's vehicle as a "farm vehicle" and avers that Plaintiff was driving a Wheel Horse lawn mower/garden tractor, towing a wood chipper.

(continued...)

make a left turn, Plaintiff's vehicle was struck from behind, ejecting Plaintiff from the vehicle. (*Id.* ¶ 9.) Plaintiff was knocked unconscious and taken by ambulance to the emergency room at York Hospital, where he was treated for injuries. (*Id.* ¶¶ 10-11.) Defendant Godboldte arrived at the accident scene after Plaintiff had been transported to York Hospital, and did not observe Plaintiff driving nor did he observe Plaintiff at the scene of the accident. (*Id.* ¶¶ 13-14.) Defendant went to York Hospital to interview Plaintiff some time later. (*Id.* ¶ 14.) Defendant claims that he obtained Plaintiff's consent to have his blood alcohol content ("BAC") tested during this interview, but Plaintiff argues that Defendant failed to procure his signature on an O'Connell warning form, which would have indicated Plaintiff's consent. (*Id.* ¶¶ 15, 17.) At Defendant's request, York Hospital Medical staff performed a BAC test using blood previously drawn by the hospital for medical purposes. (*Id.* ¶¶ 18-19.) No warrant was issued for the BAC results. (*Id.* ¶ 21.) Plaintiff's BAC was found to be .158 percent and Defendant placed Plaintiff under arrest for driving under the influence.[2] (*Id.* ¶¶ 20, 22.)

Following his arrest, Plaintiff was incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill") beginning on November 10, 2005. (*Id.* ¶ 23.) A preliminary hearing was held on or around January 18, 2006. (*Id.* ¶ 24.) Plaintiff filed a motion to suppress the BAC test on or around March 24, 2006,

---

[1](...continued)
(Amended Answer, ¶ 9.)

[2] Defendant disputes that Plaintiff was "arrested," stating instead that a criminal complaint was filed on October 26, 2005, with District Judge Heilman, who sent Plaintiff a summons listing the charges. (Amended Answer, ¶ 22.)

however the motion was withdrawn pursuant to a plea agreement.[3]  (*Id.* ¶ 25.)  On April 11, 2006, Plaintiff pled guilty before York County Judge John H. Chronister to DUI and driving while his operator's privilege was suspended.  (*Id.* ¶ 27.)  Judge Chronister sentenced Becker to one to five years imprisonment for the DUI charge, and ninety days for driving while his operator's privilege was suspended, the sentences to run concurrently.  (*Id.* ¶ 28.)  The sentence began on May 25, 2006 and Becker was sent to SCI-Rockview.  (*Id.* ¶ 29.)  On or around March 16, 2007, Plaintiff filed a *pro se* motion for post-conviction collateral relief seeking to withdraw his guilty plea and resurrect his motion to suppress.[4]  (*Id.* ¶ 30.)  Plaintiff's requested relief was granted and on June 20, 2007, the Court of Common Pleas heard Plaintiff's motion to suppress the blood test.  The motion was denied and a stipulated non-jury trial was held on August 13, 2007, after which Becker was found guilty of DUI.  (*Id.* ¶ 32; Amended Answer ¶ 32 and Ex. F.)  Plaintiff appealed and, on October 7, 2008, the Superior Court reversed the trial court's suppression order and vacated Becker's sentence, finding the blood test occurred without probable cause or Plaintiff's consent, reasoning that although Plaintiff was properly read the Implied Consent warning and consented to a blood test, a second blood test never occurred and, instead, blood that was withdrawn for other medical purposes prior to Plaintiff giving his consent was used to obtain his BAC.  (*Id.* ¶ 33; *Commonwealth v. Becker*, No. 1527 MDA 2007 (Pa. Super. Ct. Oct. 7, 2008)).  Plaintiff was released from SCI-

---

[3] The criminal docket attached to Defendant's amended answer indicates the motion to suppress was filed on March 29, 2006.  (Def.'s Amended Answer, Ex. D, Doc. 4-4, at 9 of 19.)

[4] The criminal docket attached to Defendant's amended answer indicates that the petition for post conviction collateral relief was filed on March 23, 2007.  (Def.'s Amended Answer, Ex. D, Doc. 4-4, at 10 of 19.)

Rockview on December 15, 2008, after his charges were *nolle prossed* following a hearing in the York County Court of Common Pleas.  (*Id.* ¶ 34.)

## B.   Procedural History

On October 5, 2010, Plaintiff filed the instant complaint under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights under the United States Constitution, and the Pennsylvania State Constitution.  Specifically, Plaintiff's complaint asserts the following claims: (1) Fourth Amendment violations pursuant to 42 U.S.C. Section 1983 (Count I); (2) violation of Article 1, Section 26 of the Constitution of Pennsylvania (Count II); (3) malicious prosecution (Count III); (4) abuse of process (Count IV)[5]; and (5) intentional infliction of emotional distress ("IIED") (Count V).[6]   On December 8, 2010, Defendant filed a motion for judgment on the pleadings arguing that these claims must be dismissed on the grounds that they are time-barred, that Defendant is entitled to sovereign immunity, and that Plaintiff's complaint fails to state claims upon which relief can be granted.  (Doc. 5.) On January 21, 2011, Plaintiff filed a brief in opposition.  (Doc. 10.)  Defendant replied on February 5, 2011.  (Doc. 13.)  The motion is now ripe for disposition.

## II.      Legal Standard

---

[5] It is not clear whether Plaintiff's malicious prosecution and abuse of process claims are brought pursuant to state or federal law. The structure of the complaint suggests they are brought as state claims, however, the elements set forth in Plaintiff's brief in opposition coincide with federal law.  Because this court must view a motion for judgment on the pleadings in the light most favorable to the plaintiff, these claims will be interpreted as both federal Section 1983 claims and state law claims.

[6] Plaintiff's claim against Defendant for IIED appears to be pled under tort principles of Pennsylvania state common law (invoking pendant jurisdiction without any reference to federal law), although, here again, the complaint lacks clarity.  Unlike Counts III and IV, this tort is not a matter governed by federal law or the Constitution, and thus, without reference to any federal law in the complaint, this claim will be addressed as a state law claim only.  *See Kotlinski v. Mortgage America, Inc.*, 40 F. Supp. 2d 298 (W.D. Pa. 1998).

Under Federal Rule of Civil Procedure 12(c), once the pleadings are closed, a party may move for judgment on the pleadings "within such time as to not delay the trial." FED. R. CIV. P. 12(c).[7]  The standard of review for a motion for judgment on the pleadings is identical to that of the motion to dismiss under Federal Rule 12(b)(6). *Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *Cannon v. United States*, 322 F. Supp. 2d 636, 636 (W.D. Pa. 2004); *Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001). The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings.  2 MOORE'S FED. PRACTICE CIVIL § 12.38 (2004); *Prima v. Darden Restaurants, Inc*., 78 F. Supp. 2d 337, 341-42 (D.N.J. 2000).  Despite this difference, courts in this circuit have consistently stated that the distinction between the two standards is "merely semantic." *Christy v. We The People Forms & Serv. Ctrs.*, 213 F.R.D. 235, 238 (D.N.J. 2003); *see Smith v. City of Philadelphia,* 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004) ("A motion for judgment on the pleadings pursuant to Federal Rule of  Civil Procedure 12(c) is treated using the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") (citing *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995)).

---

[7]  Federal Rule of Civil Procedure 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Phillips v. County of Allegheny, et al.*, 515 F.3d 224, 233 (3d Cir. 2008). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). *See Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007);

6

*Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.      Discussion

### A.      Fourth Amendment (Count I)

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment. Specifically, Plaintiff claims that Defendant "lacked reasonable suspicion to suspect that Becker had consumed alcoholic beverages prior to the accident" and "lacked probable cause to seize Becker's BAC results." (Compl. ¶¶ 37-38.) Read broadly and in a light most favorable to Plaintiff, the court will interpret Count I to include claims of unreasonable search and seizure and false arrest in violation of the Fourth Amendment.[8]

---

[8] Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2002). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). To prevail in an action under Section 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir.

(continued...)

Claims arising under Section 1983 are governed by the applicable state personal injury statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 187-88 (3d Cir. 2010)*; Sameric Corp. of Del. v. Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). In Pennsylvania, the statute of limitations for personal injury torts is two years. *Cassell v. City of Philadelphia*, 350 F. App'x 611, 613 (3d Cir. 2009); *Knoll v. Springfield Twp. Sch. Dist.*, 763 F.2d 584, 585 (3d Cir. 1985) (citing 42 PA. CONS. STAT. ANN. § 5524 (Purdon Supp. 1984)). Federal law, however, dictates when a Section 1983 cause of action accrues. *Raffensberger v. Moyer,* 2010 U.S. Dist. LEXIS 29938, *8-9 (E.D. Pa. March 29, 2010) (citing *MacNamara v. Hess*, 67 F. App'x 139, 143 (3d Cir. 2003)). Generally speaking, a "section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric*, 142 F.3d at 599. Moreover, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 548 U.S. 384, 397 (2007); *see also Dique*, 603 F.3d at 187-88. Similarly, "[w]hen the plaintiff alleges that he or she has been subjected to an unreasonable search and/or seizure conducted in plaintiff's presence, courts will generally find that the plaintiff knew of the injury, and thus the cause of action accrued, on the day the search and/or seizure took place." *Raffensberger,* 2010 U.S. Dist. LEXIS 29938, *8-9 (citing *MacNamara,* 67 F. App'x at 143).

---

[8](...continued)
1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

Plaintiff initiated this action on October 5, 2010.  By using any of the possible accrual dates, it is clear that Plaintiff's Fourth Amendment claims are time-barred.  For example, Plaintiff alleges that the improper seizure of his BAC results occurred on October 17, 2005.  (Compl. ¶¶ 9-20, 38.)  Thus, the two-year statute of limitations on Plaintiff's improper seizure claim began running on October 17, 2005, and would have expired October 17, 2007, almost three years prior to the filing of the instant complaint.  To the extent that the complaint asserts a Fourth Amendment false imprisonment claim, the Plaintiff avers that he was first "arrested" on October 17, 2005 and was incarcerated on November 10, 2005.  (*Id.* ¶¶ 22, 23.)  Basing accrual on either of these dates, it is once again apparent that the two-year statute of limitations had long expired prior to the filing of this complaint.

Plaintiff argues that under the "discovery rule," the statute of limitations was tolled until he first came to "appreciate the injustices" of his search and arrest which occurred when the Superior Court of Pennsylvania ruled in his favor on the suppression of his BAC results on or around October 7, 2008.  (Pl.'s Br. in Opp. at 3-4).  This assertion is unpersuasive.

Pennsylvania favors a strict application of the statute of limitations, applying the discovery rule only in instances where "the injured party is unable, despite the exercise of due diligence, to know the injury or its cause. . . .  Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. Ct. 2007) (internal citations omitted).  To suggest that Plaintiff "did not have the requisite knowledge to appreciate the injustices which had been perpetrated upon him" (Pl.'s Br. in Opp. at 4) until the Superior Court ruled in his favor by suppressing the BAC test is

nonsensical.  Certainly, parties have an awareness of claims argued in court prior to the court making its ruling on those claims.  The court is unmoved by the notion that Becker had no knowledge or appreciation of any injustices against him until after the Superior Court made its ruling in his favor.   In fact, the record shows that Plaintiff first made arguments alleging false arrest and unlawful search on June 20, 2007, in the Court of Common Pleas while arguing a motion to suppress the blood results and a *habeas corpus* motion seeking to challenge the validity of his charges.  (*See* Def.'s Amended Answer, Ex. A, Doc. 4-1, Trans. of Proceedings 3:9-11.)[9]  These arguments indicate that Plaintiff had knowledge of his alleged injuries related to both the unlawful search and seizure and false arrest claims as of June 20, 2007.  Plaintiff was ultimately found guilty of the DUI offense on August 13, 2007, (*see* Ex. D at 6), at which time he certainly would have appreciated any injustices allegedly performed upon him.  Plaintiff failed to file his complaint within two years of either of these dates. Thus, notwithstanding Pennsylvania's very limited application of the discovery rule, applying it here would nevertheless fail to render this claim timely.

In short, even if the court were to interpret Count I of the complaint as broadly as possible and examine any number of dates of accrual and apply the discovery rule, the fact remains that Becker did not institute this action until long after the expiration of the applicable two-year statute of limitations.  Thus, Plaintiff's Section 1983 Fourth Amendment claims will be dismissed.

## B.   Section 1983 Abuse of Process (Count IV)

---

[9] Although the court will consider exhibits here and elsewhere in our ruling on this motion, the court will not convert this motion into a motion for summary judgment. In so doing, the court notes that Federal Rule of Civil Procedure (10)(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Both complaints and answers are considered to be pleadings under the Federal Rules.  *See* FED. R. CIV. P. (7)(a).

As stated, claims arising under Section 1983 are governed by the applicable state personal injury statute of limitations, which in Pennsylvania is two years. *Cassell*, 350 F. App'x at 613; *Knoll*, 763 F.2d at 585 (citing 42 PA. CONS. STAT. ANN. § 5524 (Purdon Supp. 1984)).[10] Plaintiff brought this Section 1983 claim for abuse of process, alleging that "Defendant . . . misused the regular court processes through his [1] knowing and intentional actions taken to obtain Becker's BAC test results, [2] to arrest Becker, and [3] initiate the filing of charges against Becker." (Compl. ¶ 57.)  The statute of limitations for an abuse of process claim begins to run "as soon as the right to institute and maintain a suit arises." *Sutton v. West Chester Area Sch. Dist.*, 2004 U.S. Dist. LEXIS 7967, at *26 (E.D. Pa. May 6, 2004) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce*, 468 A.2d 468, 471 (Pa. 1983)).  By the plain language of the complaint, it is clear that the events giving rise to Plaintiff's abuse of process claim were the performance of the BAC test and his arrest, both of which occurred on October 17, 2005, and the filing of charges against Becker, which occurred on October 26, 2005.  (Compl. ¶¶ 9-21, 38; Def.'s Amended Answer, Ex. D, Doc. 4-4, Criminal Docket at 2 of 19.)   Thus, Plaintiff's right to "institute and maintain" the action would have arose no later than either of those dates, both of which occurred almost five years prior to the filing of the complaint in this action.  The two-year statute of limitations having expired, Plaintiff's Section 1983 claim for abuse of process is dismissed as time-barred.

Although the court could stop there, it is further noted that Plaintiff's complaint also fails to allege an abuse of process claim.  In Pennsylvania, abuse of

---

[10]   Pennsylvania law also provides a two-year statute of limitations for actions for abuse of process arising under common law.  *See* 42 PA. CONS. STAT. ANN. § 5524(1).

process is found "when a party employs legal process against another primarily to accomplish a purpose for which it was not designed." *Napier v. City of New Castle*, 2010 U.S. App. LEXIS 22353, *6-7 (3d Cir. Oct. 28, 2010) (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307 (3d Cir. 2003)). "Pennsylvania recognizes a cause of action for abuse of process where 'the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff.'" *Napier*, 2010 U.S. App. LEXIS 22353, at *7 (citing *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)).

　　　　While a malicious prosecution claim focuses on any potentially improper filing of criminal charges, abuse of process focuses on a legitimately initiated proceeding that is *subsequently used* for a purpose other than that intended by law. *Id.* "The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it . . . ." *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 33 (Pa. Super. Ct. 1990). As the Third Circuit made clear in *Napier*, "'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Napier,* 2010 U.S. App. LEXIS 22353, at *8 (internal citations omitted). In *Napier*, police officers arrested the plaintiff and continued to participate in criminal proceedings to avoid embarrassment because, as the plaintiff argued, the police knew they had arrested the wrong person. *Id.* The Third Circuit upheld the district court's dismissal of the claim reasoning that, despite the officers' potentially improper motives surrounding their continued participation in the proceeding, the officers used

the legal process for its intended purpose, namely the pursuit of a criminal conviction. *Id.,* at *8-9.

Here, Plaintiff's allegations speak only to Defendant's actions leading up to and including the filing of criminal charges. These allegations fail on their face because they pertain only to the initiation of proceedings, and not to any subsequent improper use of legal processes. However, even reading Plaintiff's complaint to imply that Defendant's continued participation in the prosecution was improper, Plaintiff also fails to allege that this participation was for any purpose other than to obtain a criminal conviction. In short, Plaintiff's Section 1983 abuse of process claim can be dismissed as time-barred and for failure to state a claim.

## C.      Section 1983 Malicious Prosecution (Count III)

Plaintiff's complaint states that "Defendant Godboldte maliciously and deliberately initiated and continued the criminal proceedings by arresting Roger Becker with an improper and unconstitutional purpose after stereotyping Becker as a criminal and acting on that stereotype." (Compl. ¶ 52.) To establish a Section 1983 claim for malicious prosecution, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a reason other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beechwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Plaintiff's malicious prosecution claim is not barred by the statute of limitations because "[t]he statute of limitations on malicious prosecution claims 'does not begin to run until the underlying criminal proceedings are terminated in

plaintiff's favor.'" *Stanley v. City of Pittsburgh*, 2011 U.S. Dist. LEXIS 37255, at *6 (W.D. Pa. April 6, 2011) (quoting *Rose v. Bartle*, 871 F.2d 331, 348 (3d Cir. 1989)); *see also Sicola v. First Nat'l Bank of Altoona*, 404 Pa. 18, 22 (1961). Thus, interpreting this standard in a light most favorable to Plaintiff, the two-year time frame for the claim would start running when the Pennsylvania Superior Court ruled in his favor on October 7, 2008, making the October 5, 2010 complaint timely regarding this claim. However, this claim is deficient because Plaintiff fails to allege sufficient facts to show a lack of probable cause and further fails to allege that Defendant acted maliciously or for a reason other than bringing Plaintiff to justice.

Courts have found that a guilty plea, standing alone, conclusively establishes the existence of probable cause. *White v. Brown*, 2010 U.S. Dist. LEXIS 41583, *5n.4 (E.D. Pa. April 28, 2010), *aff'd*, 2010 U.S. App. LEXIS 22933 (3d Cir. Nov. 4, 2010); *Hamidian v. Occulto*, 854 F. Supp. 350, 354 (M.D. Pa. 1994); *Bussard v. Neil*, 616 F. Supp. 854, 857 (M.D. Pa. 1985). Here, the pleadings clearly establish that Becker plead guilty to DUI and driving while his operator's privilege was suspended and was sentenced on April 11, 2006. (Compl. ¶¶ 27-28.) Although the guilty plea was later withdrawn, Becker was once again found guilty following a stipulated non-jury trial. (*Id*. ¶ 32; Amended Answer ¶ 32 and Ex. F.) In his brief in opposition to Defendant's motion, Plaintiff argues that these facts should not be dispositive when considered in conjunction with the Superior Court's reversal of his conviction. (Doc. 10 at 8.) This argument is not persuasive, however, because "a conviction, upon examination by a judicial officer, conclusively establishes the existence of probable cause, *regardless of whether the conviction is subsequently reversed on appeal*." *Hamidian,* 854 F. Supp. at 354 (emphasis added)(quoting

*Bussard*, 616 F. Supp. at 857); *see also* RESTATEMENT (SECOND) OF TORTS § 667 (1963).[11]  Plaintiff does not assert that his conviction in the Court of Common Pleas was procured by fraud, perjury, or other unjust means.  Lacking such additional evidence, the subsequent reversal of his conviction by the Pennsylvania Superior Court does not override the probable cause presumed as a result of his conviction in the Court of Common Pleas.  *See id.*

Even without Plaintiff's conviction, and taking his allegations as true, his complaint fails to articulate a lack of probable cause.  The court reiterates that it is Plaintiff's burden to submit a complaint that states a claim upon which relief can be granted.  To meet this burden here, Plaintiff was required to set forth information from which each element of a claim many be inferred.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  Here, the only averments in the complaint that could be attributed to satisfying the lack of probable cause element required for a malicious prosecution claim are those regarding Defendant's failure "to obtain [Becker's] signature on an O'Connell warning form" (Compl. ¶ 17) and Defendant's failure to actually observe Plaintiff driving or at the accident scene (*Id.* ¶ 13).  In Plaintiff's brief in opposition to Defendant's motion, Plaintiff argues that Defendant lacked probable cause to initiate the criminal proceedings against him because the only evidence Defendant had to establish probable cause was the odor of alcohol emanating from Plaintiff while hospitalized.  (Pl.'s Br. in Opp. at 4-5.)  Plaintiff again points out that Defendant did not observe Plaintiff driving nor did he see Plaintiff at the accident scene.  (*Id.*)  Thus, Plaintiff argues that the smell of alcohol

---

[11] It is noted, however, that a District Magistrate's decision may not be conclusive on the question of probable cause in a malicious prosecution claim.  *Hamidian*, 854 F. Supp at 354 (gathering cases).

could have emanated from any number of sources in a hospital and it may have been mistakenly attributed to Plaintiff. (*Id.*) While conceding that this evidence led Defendant to have a "suspicion of intoxication," Plaintiff believes the evidence amounted to something less than probable cause. (*Id.* at 5.)

Probable cause is established upon the facts and circumstances available to the arresting officer at the time of arrest. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Pennsylvania law governs the validity of the arrest in this case. *U.S. v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). Under Pennsylvania law, "probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Welshans*, 580 A.2d 379, 381 (Pa. Super. Ct. 1990), *aff'd*, 605 A.2d 1222 (Pa. 1992).

The court finds that the pleadings establish facts that would lead a prudent person to believe that Plaintiff had been intoxicated while driving. The pleadings establish that, contrary to Plaintiff's argument, the odor of alcohol was not the only evidence available to Trooper Godboldte to determine probable cause. Witnesses told Defendant that Plaintiff had been driving a lawn tractor on a public road at night with no lights. (Amended Answer, Ex. A at 17:5-21.) While driving the lawn tractor, Plaintiff was involved in the accident that resulted in his being taken to the hospital. Defendant did not have a valid driver's license at the time of arrest as a result of a prior DUI. (*See* Amended Answer, Ex. B at 8.) When Defendant spoke to Plaintiff at the hospital, he detected a strong odor of alcohol on his breath. (Amended Answer, Ex. A at 12:13-15; Ex. B at 8 (detecting "an alcoholic beverage about [Plaintiff's] breath"); Ex. C at 3 (indicating a strong odor of alcohol)). While

Plaintiff points out that the strong smell of alcohol could have been introduced in some other manner, Defendant need not have had evidence to prove guilt beyond a reasonable doubt.  Given the fact that Plaintiff was taken directly to the hospital from the scene of the accident after being thrown from his vehicle and knocked unconscious, it would not be unreasonable to believe the presence of alcohol preexisted Plaintiff's accident.[12]

In short, Plaintiff's guilty plea and subsequent conviction conclusively establish that probable cause existed to initiate criminal proceedings against Becker.  Even so, the court's independent analysis of the record, including the pleadings and the exhibits attached thereto, further confirms that Plaintiff failed to sufficiently plead that Defendant lacked probable cause to initiate criminal proceedings against Plaintiff.  Moreover, nothing in the complaint, aside from a vague reference to stereotyping, suggests that Defendant acted maliciously or for a reason other than bringing Plaintiff to justice.  Thus, the complaint fails to articulate a claim for malicious prosecution and this claim will be dismissed.

### D.  State Law Claims of Malicious Prosecution, Abuse of Process and IIED (Counts III-V)

The Pennsylvania General Assembly, after the judicial abolition of sovereign immunity by the Pennsylvania Supreme Court in *Mayle v. Pa. Dep't of*

---

[12]  Because a lack of probable cause is a necessary element of Plaintiff's Fourth Amendment unreasonable search and seizure and false imprisonment claims, the court's conclusion that Defendant acted upon probable cause represents an additional basis for dismissal of Count I of Plaintiff's complaint.  However, because the court will dismiss those claims as time-barred (*see* Section A, *supra*), there is no need for further analysis for dismissal on this basis.

*Highways,* 388 A.2d 709 (Pa. 1978), reaffirmed by statute the concept of immunity

for the Commonwealth and its employees.  The statute reads:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, *and its officials and employees acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 PA. CONS. STAT. ANN. § 2310 (emphasis added).

According to the clear language of the statute, not only the

Commonwealth, but also its employees and officials are entitled to immunity.  "In

other words, if the Commonwealth is entitled to sovereign immunity under Act 152,

then its officials and employees acting within the scope of their duties are likewise

immune." *Moore v. Commonwealth,* 538 A.2d 111, 115 (Pa. Commw. Ct. 1988).

[T]he proper test to determine if a Commonwealth employee is

protected from liability pursuant to 1 Pa. Cons. Stat. Ann. § 2310 and 42 Pa. Cons.

Stat. Ann. § 8522 is to consider whether the Commonwealth employee was acting

within the scope of his or her employment; whether the alleged act which causes

injury was negligent and damages would be recoverable but for the availability of the

immunity defense; and whether the act fits within one of the nine exceptions to

sovereign immunity. *See La Frankie v. Miklich,* 618 A.2d 1145, 1149 (Pa. Commw.

Ct. 1992).  Immunity has been previously upheld for Commonwealth law

enforcement officers by this court as well as by the courts of the state. *See*, *e.g.*,

*Shoop v. Dauphin County*, 766 F. Supp. 1327, 1333 -1334 (M.D. Pa. 1991) (finding that state police officers had immunity pursuant to 1 Pa. Cons. Stat. Ann. § 2310); *Borosky v. Commonwealth,* 406 A.2d 256 (Pa. Commw. Ct. 1979) (immunity upheld for claim against Commonwealth for alleged false arrest by state troopers).

The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 PA. CONS. STAT. ANN. § 8522.  None of these exceptions apply to the circumstances described in the complaint.

In his brief in opposition to Defendant's motion, Plaintiff discusses only whether the Defendant is entitled to *qualified* immunity, citing cases dealing with the question of immunity in regard to federal law claims brought pursuant to Section 1983.[13]  Defendant's motion, however, is not premised upon qualified immunity for federal law claims, but rather the Commonwealth's grant of statutory immunity to its employees for suits arising out of state law claims while those employees were acting within the scope of their duties.

Here, Defendant, as a Pennsylvania State Police officer, is an employee of the state and, at all relevant times, was acting within the scope of his duties as a

---

[13] Plaintiff correctly cites this court's holding in *Shoop,* 766 F. Supp. 1327, as finding no qualified immunity for an officer who acted without probable cause, however, that holding was in regard to federal §1983 claims.  The pertinent holding in *Shoop* found the same officer immune from state law claims pursuant to 1 Pa. Const. Stat. Ann. § 2310.

Pennsylvania State Police officer.  Courts have found that conduct of an employee is within the scope of employment if "'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits. . . .'"  *Larsen v. State Employees' Ret. Sys.,* 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) (quoting *Velykis v. Shannon,* 2006 WL 3098025, at *3-4 (M.D. Pa. Oct. 30, 2006)).  Because Plaintiff erroneously addresses this issue under the qualified immunity standard (instead of the sovereign immunity standard), Plaintiff does not address whether Defendant was acting outside the scope of his employment.  However, the complaint alleges that Trooper Godboldte is "employed as a State Police Officer [and] at all time relevant hereto, he acted under color of state law." (Compl. ¶ 8.)  The court's independent analysis finds that the Defendant's alleged conduct, namely investigating an accident scene, interviewing witnesses and Plaintiff, providing the O'Connell warning, obtaining blood tests, and charging Plaintiff with violations of Pennsylvania law, are all of a kind and nature that a trooper is employed to perform.  All allegations were taken in Godboldte's capacity as a trooper during normal work hours.  Moreover, Plaintiff's state law claims do not escape the application of sovereign immunity simply because Defendant was sued in his individual capacity.  "Sovereign immunity . . . applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting with the scope of their duties.'"  *Larsen,* 553 F. Supp. 2d at 420 (quoting *Maute v. Frank,* 657 A.2d 985, 986 (Pa. Super. Ct. 1995)).  It is clear that Defendant was acting at all relevant times within the scope of his duties and that sovereign immunity therefore applies to Plaintiff's state law claims.  Because the grant of

sovereign immunity covers Defendant's actions at all relevant times, Counts III-V, to the extent they are asserting state law claims, are dismissed.

### E.   State Constitutional Claim (Count II)

Plaintiff also claims that "Defendant Godboldte violated Becker's rights under the Constitution of Pennsylvania, and particularly the Declaration of Rights which explicitly states that 'all power being originally inherent in, and consequently derived from, the people; therefore all officers of the government, whether legislative or executive, are their trustee and servants, and at all times accountable to them.'" (Compl. ¶ 43) (quoting PA. CONST. of 1776, ch. § IV.)  Plaintiff also cites to Article 1, Section 26 of the Pennsylvania Constitution which states "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the right of any civil right."  (Compl. ¶ 44) (quoting PA. CONST. art.1, § 26.)

Although the Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a cause of action for damages for state constitutional violations, the Commonwealth Court as well as federal district courts explicitly hold that no such rights exist.[14]  *See, e.g., Bodnar v. Wagner*, 2010 U.S. Dist. LEXIS 289, at *20-21 (M.D. Pa. Jan. 5, 2010) (agreeing with other courts that "there is no private cause of action available for seeking monetary damages for violations of the Pennsylvania Constitution"); *Taylor v. Moletsky*, 2010 U.S. Dist. LEXIS 6260 (E.D. Pa. Jan. 26, 2010) (same); *Jones v. City*

---

[14] When making a prediction as to how the Pennsylvania Supreme Court would rule, the court "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," among other sources.  *Knopick v. Connelly,* 2011 U.S. App. LEXIS 7554 (3d Cir. April 13, 2011) (quoting *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010)).

*of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("neither statutory, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution"), *app. denied*, 909 A.2d 1291 (2006). Accordingly, Plaintiff's claim for monetary damages pursuant to the Pennsylvania Constitution fails.

**IV.**          <u>**Conclusion**</u>

In accordance with the foregoing discussion, the court will grant Defendant's motion for judgment on the pleadings as to all counts of Plaintiff's complaint.  An appropriate order will issue.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  May 24, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ROGER BECKER,**                   :
          **Plaintiff**        :      **Civil No. 1:10-CV-2066**
                   :
                   :
        **v.**              :
                   :
**JEFFREY M. GODBOLDTE,**            :      **(J. Rambo)**
          **Defendant**        :

### O R D E R

      In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's motion for judgment on the pleadings (Doc. 5) is **GRANTED** and the claims in Plaintiff's complaint are dismissed with prejudice for the reasons stated in the accompanying memorandum.  The Clerk of Court is directed to close the case.

                                       _s/Sylvia H. Rambo_
                                       SYLVIA H. RAMBO
                                       United States District Judge

Dated:  May 24, 2011.